[Crim. No. 5209. Second Dist., Div. Three. Nov. 19, 1954.]

THE PEOPLE, Respondent, v. EDWARD DANIEL SAMUSICK et al., Appellants.

Eugene V. McPherson and Harold J. Ackerman for Appellants.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

SHINN, P. J.—Edward Daniel Samusick and Vincent Eugene Mandella were charged with robbery. It was also alleged that at the time of the commission of the crime defendants were armed with a .22 automatic. The cause was called for trial, evidence was presented and the cause was argued. On motion of the district attorney the allegation that defendants were armed with a deadly weapon at the time of the commission of the offense was stricken from the record. Defendants were found guilty of robbery of the first degree. Motion was made for a new trial by each defendant and was denied. Application for probation was also denied and the court pronounced judgment and sentenced each defendant to state prison for the term prescribed by law. Defendants appeal.

On December 7, 1953, Paul Wood was working in a Serve-Yourself Gas Station located at 10711 Long Beach Boulevard in Lynwood. Also present at this time was a boy named David Beard who had just started to work for him. At approximately 11:45 a. m., while Mr. Wood was sitting in the office part of the station making out his reports, a man came in, thrust a gun at him and said: "Do you know what this is?" and "I mean business." Mr. Wood, who was in fear of the gun, handed the man the money from his right shirt pocket. It amounted to $93. This money belonged to the company and not to Mr. Wood. The intruder then asked if there was any more money. Mr. Wood told him that that was all he had. The intruder then went through the desk drawers. After he finished looking in the drawers he backed up, saying in effect, "Be still. Stay there." David Beard was present at the time of the robbery and later went outside and called the police. Mr. Wood identified the intruder as defendant Samusick at the Lynwood Police Station about 7 or 8 p. m. December 7th. He could identify defendant Samusick even though when he entered the gas station office he was wearing a painter's respirator over his face. Only Samusick's chin and the top part of his eyes were visible. Mr. Wood also described defendant Samusick as wearing a dark coat and a T-shirt. The coat was similar to an army

jacket. Th pants were of black cotton material. The $93 that was taken consisted of two checks, two or three tens or twenties and the rest small bills, such as fives and ones. The two checks were in the amounts of $18 and $3.00. Approximately $72 in cash was taken. Mr. Wood identified Samusick from his appearance, his hair, the gun and especially his voice. However, he could not identify him from his face because he could see so little of it.

Henry A. Burke, who lived a short block away from the Serve-Yourself Gas Station, testified that on the morning in question, he saw an automobile stop in front of his house, and a man get out of the car and walk to the gas station. Another man remained in the car. After the first man got out, the second man turned the car around so that it was facing south. Two or three minutes later, the man who had walked toward the gas station ran back to the car. He jumped in and the car took off rapidly down the street. Mr. Burke wrote down the license number of the car. He did not testify to the number and there was no evidence that the car that drove away had the number of Samusick's car.

The man who went into the gas station was wearing a white cap and it was similar to the white painter's cap, defendant's Exhibit "A." Defendant Samusick appeared to Mr. Burke to be of the same general height and description as the man he saw running back from the gas station. However, he could not identify Samusick as the man.

Elton Whildin was a block south of the Serve-Yourself Gas Station at the time in question. A 1939 Chevrolet attracted his attention by driving past him at a high rate of speed, accelerating rapidly. It attracted Mr. Whildin's attention because he thought it was going too fast in a residential neighborhood with a number of children on the street. As the car went past him he got a good look at the driver whom he identified as defendant Mandella. He saw another person in the car but did not get a good look at him and could not identify him. The car turned the corner at the end of the block and Mr. Whildin could not get the license number of the automobile.

On December 7, 1953, W. M. Bailey, a police officer of the City of Lynwood arrested defendant Samusick at 64th and Main Streets in Lynwood. At the time of his arrest he was driving a 1939 Chevrolet two-door dark green sedan with license No. 3-P-97300. A .22 automatic gun was found on the seat beside him. There was a clip in the gun but no

bullets. At the time of his arrest defendant Samusick admitted that the car he was driving was his, but claimed that the gun belonged to David Beard. Defendant Samusick was taken to the police station and placed in a line-up and Mr. Wood was asked to identify him. Mr. Wood recognized defendant Samusick as the man who held him up after the defendant was asked to speak. Mr. Wood could make positive recognition of his voice as being the same as that of the man who had robbed him.

The following day, Officer Bailey went to defendant Mandella's home and arrested him. Mandella admitted having been riding with Samusick for about two hours on December 7th but consistently denied having taken part in the robbery. After Bailey had interrogated each of the defendants separately, Mandella told Officer Bailey and Lieutenant Dederick of the Lynwood Police Department that he would like to have a chance to talk with Samusick before he made any statement. Shortly thereafter, they were put in a room together for approximately half an hour. They were interrogated again and Samusick related in Mandella's presence that they had planned earlier Monday morning to go to this service station and rob it. They related that Mandella drove the car and parked it on Barlow Street; that Samusick went into the service station, carrying the gun, and took the money. Samusick admitted that the painter's mask belonged to his brother. Samusick claimed that they received $30 approximately, $20 of which he kept and $10 was given to Mandella. The defendants were asked why they picked this particular service station and they said it was because their friend, David Beard, worked there, and they felt that he would not identify them. Shortly thereafter, a formal question and answer statement was taken down and signed by each of the defendants. Preliminary to the receipt of his testimony as to the oral and written statements Officer Bailey testified that no force or violence or offer of reward or immunity was used to induce either of the defendants to make them.

Each of the defendants testified in his own behalf. Defendant Samusick admitted that on the day in question he had a .22 caliber gun which was People's Exhibit No. 1. He claimed, however, that at 3 o'clock on that day he had decided to take the gun for target practice and went out on Figueroa Street and shot it. He admitted signing the statement along with defendant Mandella. He testified that he was questioned repeatedly and at great length by the officers and con-

sistently denied having participated in the robbery; that he was beaten and threatened by the officers and that he made the admissions and confession only because he was in fear of further violence. He denied that he had been at the Serve-Yourself Gas Station in question at any time on the morning of December 7, 1953.

Defendant Mandella, who claimed that he could neither read nor write except for his name, testified that the statement was never read to him and he did not make it freely and voluntarily; that one of the officers hit him on the side of the neck with his open hand, another hit him in the stomach and they told him, "We aint going to get this nice new police station all bloody. We are going to take you and Samusick out in the country," if they did not sign confessions and that he signed a statement because of his fear of what might happen to him. He also denied that he had been to the Serve-Yourself Gas Station in question at any time on the morning of December 7th. He claimed that he had been home that morning and until about 1:30 to 2 p. m.

David Beard stated that he had known defendant Samusick for 15 or 16 years. He testified that he had not known defendant Mandella prior to the date of the robbery. He admitted being present when the robbery took place but did not recognize the person or persons who committed it. Beard testified that when he saw defendant Samusick at the Lynwood Police Station the day after the robbery he "looked like he had just been beat up." Defendant Samusick showed him a big bruise on his arm and another one on the side of his neck.

Mrs. Antoinette Mandella, mother of defendant Mandella, testified that her son was at home on December 7, 1953, until about 3 minutes to 12 at which time Mrs. Mandella sent him to his wife's place of employment with some lunch for her. When asked how he got to his wife's place of employment, which was a distance of seven blocks from his home, Mrs. Mandella testified that he walked and returned home again about 10 or 15 minutes after 12 where he remained until she left the home around 1 p. m.

Jacob Samusick, father of defendant Samusick testified that on the morning of December 7, 1953, his son drove him to work and appeared to be in perfect physical condition.

The written statements of the defendants were received in evidence without objection. In rebuttal the officers who had been accused of having used violence upon the defendants

testified that they had not struck either of the defendants, used any other form of violence or threatened them in any manner.

The contentions of Samusick on appeal are (1) the court erroneously permitted the receipt of evidence of other offenses, (2) his confession was involuntary, (3) the court misdirected the jury, and (4) the evidence was insufficient to justify the verdict.

■ Officer O'Keefe testified that he talked to Samusick "about some robberies." Officer Tiernan testified that he talked with Samusick about the robbery in question "as well as others." This witness testified that he talked with Dave Beard and that Beard told him that Samusick committed the robbery but that he did not want to identify him because he and Samusick had some other plans in the future. To the leading question that elicited this testimony no objection was made. Officer Dederick testified that he also had a conversation with Dave Beard and that Beard said that Samusick had committed the robbery but he would not identify him because he and Samusick had arranged to commit another robbery on the following night. No objection was made to the leading question which elicited this testimony. The testimony as to the statements of Beard was hearsay and subject to be stricken out on motion, but no such motion was made.

There was no evidence of other offenses committed or claimed to have been committed by the defendant Samusick. No objection was interposed to the questions which elicited the statements of Beard to the officers and no motion was made to strike them. This claim of error may not be considered.

■ There is no merit in the contention that the confessions were erroneously admitted. They were received without objection. Moreover, the evidence as to the voluntary character of the confessions was in sharp conflict and this would preclude a holding as a matter of law that they were involuntary. (*People* v. *Kazarian,* 83 Cal.App.2d 471 [189 P.2d 39].)

The next point is that the court, of its own motion, should have given an instruction on circumstantial evidence. In the brief our attention is not called to any circumstantial evidence to which the instruction would have been applicable. There was evidence that the robbers escaped in a 1939 Chevrolet and that Samusick owned and was driving a 1939 Chevrolet at the time of his arrest. A gun was found in his possession. This evidence was merely incidental to the identi-

fication of Samusick by Wood and the evidence of his admissions and confession. The circumstantial evidence was inconsequential in itself although it tended in some degree to corroborate the direct evidence. ■ If the People do not rely upon circumstantial evidence to a substantial extent there is no occasion for the jury to consider the sufficiency of the circumstantial evidence to prove guilt and it would be misleading to suggest that they should do so. (*People* v. *Jerman,* 29 Cal.2d 189 [173 P.2d 805].)

■ Upon the appeal of Mandella it is argued that there was insufficient evidence to justify the verdict against him. In our opinion the evidence was sufficient. He was identified as the driver of a 1939 Chevrolet which was speeding away from the scene of the robbery immediately after its commission. He confessed to having committed the crime. He argues that his confession was involuntary but concedes that the evidence as to its voluntary character was in sharp conflict. The evidence that he was hurrying away from the scene of the crime was merely incidental to the evidence, of the confession. It is evident that the jury believed that the confession was voluntary and that Mandella did not confess to having committed a crime that he did not commit. If the jury had believed that he did not confess voluntarily there would have remained for consideration only slight circumstantial evidence. It is inconceivable that the jury could have discarded as unreliable the evidence of the confession and at the same time have determined that the circumstantial evidence was sufficient to establish Mandella's guilt. ■ It was not the duty of the court to give an instruction on circumstantial evidence.

The judgments and orders denying motions for new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied November 30, 1954.